**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **BROADCAST MUSIC, INC., ET AL.** | **:** | **CIVIL ACTION NO.** |
| **Plaintiffs,** | **:** | **3:13-CV-01237 (VLB)** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **THE HUB AT COBB'S MILL, LLC, ET AL.** | **:** | |
| **Defendant.** | **:** | **April 2, 2015** |

**MEMORANDUM OF DECISION GRANTING PLAINTIFFS' MOTION FOR SUMMARY**
**JUDGMENT [Dkt. #27]**

 Plaintiffs, Broadcast Music, Inc. ("BMI") and copyright owners of various compositions (collectively "Plaintiffs"), bring this infringement action against Defendants, The Hub at Cobb's Mill, LLC ("Hub"), which at the time was doing business as La Roue Elayne at Cobb's Mill Inn ("La Roue"), Drew Friedman ("Friedman"), and Elayne Cassara ("Cassara").  Currently pending before the Court is Plaintiffs' motion for summary judgment as to Defendant Friedman, the only defendant who has appeared in this action.  For the reasons that follow, the Plaintiffs' Motion for Summary Judgment is GRANTED.

 <u>Factual Background</u>

 Nearly all of the facts in this case are undisputed.  Plaintiff BMI is a performing rights organization which licenses the right to publicly perform copyrighted musical composition works on behalf of the copyright owners of these works.  [Dkt. #28, Ps' Local Rule 56(a)(1) Statement at ¶ 1; Dkt. #34, D's Local Rule 56(a)(2) Statement at ¶ 1].  The other plaintiffs are the copyright owners of the compositions which are the subject of this lawsuit.  [*Id.* at ¶ 5].  Defendant La Roue shared a business address with Defendant Hub.  [*Id.* at ¶ 8].

1

Friedman was a member of Defendant Hub and had a direct financial interest in La Roue. [*Id.* at ¶¶ 9, 11]. However, Friedman asserts that in February 2013, he had a falling out with the co-owner of La Roue, Defendant Cassara, and thereafter, Cassara asserted exclusive control over La Roue, including over the hiring and firing of employees. [Dkt. #35, Friedman Aff. at ¶ 3]. That same month, February 2013, Friedman claims that Cassara emptied and removed the contents of Friedman's office at La Roue and told him he was no longer welcome on the premises and had no say in the affairs of the business. [*Id.* at ¶ 4]. In addition, from this point on, Cassara retained all income and any profits generated by La Roue. [*Id.* at ¶ 3]. In the following months, when Friedman went to La Roue with his wife, Friedman claims they were publicly informed by Cassara that Friedman would be permitted to remain on the premises provided he pay for his food and drink like any other patron. [*Id.* at ¶ 4]. According to Friedman, by May 2013, Cassara had been in exclusive control of the premises for two months. [*Id.* at ¶ 6]. On May 14, 2013, Cassara sent Friedman an email, in which she stated that she had gained "total control of our operations in the last few weeks." [*Id.*; Dkt. #35-2 at 1]. Friedman also describes and attaches a mission statement, purportedly written by Cassara in 2012, which stated that Cassara "will direct the procurement of live entertainment and all adjunct artistic activities." [*Id.* at ¶ 8; Dkt. #35-3 at 1].

On June 6, 2013, a band named "The Twisted Vine," publicly performed at La Roue. [*Id.* at ¶ 20; Dkt. #29, Mullaney Decl. at ¶ 10; Dkt. #29-47, Certified Infringement Report, at 1-5]. The performance included at least eight musical

compositions, the copyrights for which were owned by Plaintiffs. [Dkt. #28, Ps' Local Rule 56(a)(1) Statement at ¶¶ 21-22; Dkt. #34, D's Local Rule 56(a)(2) Statement at ¶¶ 21-22]. The Defendants were not licensed or authorized by any of the Plaintiffs to publicly perform these compositions. [*Id.* at ¶ 24]. Friedman was on notice prior to the performance that he was not permitted to have BMI's compositions publicly performed at La Roue. He had previously been offered, but did not accept, a license agreement from BMI. [*Id.* at ¶ 25]. In fact, between August 2012 and June 2013, BMI sent Friedman and Cassara a total of twenty-three letters regarding a license agreement. [*Id.* at ¶ 16]. On April 23, 2013, over a month before the infringement date, BMI further instructed Friedman to cease public performance of music licensed by BMI. [*Id.* at ¶ 27; Dkt. #29-34]. Following the June 6, 2013 performance, Plaintiffs do not offer any evidence that the Defendants engaged in any subsequent infringing activities.

In December 2013, Friedman evicted Defendant Cassara from La Roue and repossessed the premises. [Dkt. #35, Friedman Aff. at ¶ 10; Dkt. #35-5 at 1]. Following this repossession, La Roue was closed in early 2014, and Friedman is presently operating a different restaurant at The Cobb's Mill Inn. [Dkt. #28, Ps' Local Rule 56(a)(1) Statement at ¶ 12; Dkt. #34, D's Local Rule 56(a)(2) Statement at ¶ 12].

Plaintiffs further contend, and Friedman admits, that, had Defendants entered into an agreement at the time BMI first contacted them in August 2012, the estimated license fees between August 2012 and July 2013 would have been approximately $7,607.50, and the estimated license fees between August 2013

and July 2014 would have been $7,862.50.  [*Id.* at ¶ 26].  Plaintiffs have spent over approximately $11,000.00 in attorney fees in their attempt to enforce their rights. [*Id.* at ¶ 29].

**Standard of Review**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).  In addition, determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment, as such are within the sole province of the jury.  *Hayes v. New York City Dep't of Corr.,* 84 F. 3d 614, 619 (2d Cir. 1996).  "A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits

4

supporting the motion are not credible.  At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.,* No. 3:03-cv-481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, 817 F. Supp. 2d 28, 37 (D. Conn 2011).  Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie.  *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712, 727 (2d Cir. 2010).

<u>Analysis</u>

a. <u>Plaintiffs Have Proven Eight Instances of Copyright Infringement Occurred at Defendant La Roue on June 6, 2013</u>

To establish liability for infringement of copyright in musical compositions, Plaintiffs "must make sufficient allegations concerning (1) the originality and authorship of the compositions; (2) compliance with formalities required to secure a copyright; (3) ownership of the copyrighted compositions; and (4) unauthorized public performance of the copyrighted compositions by defendant[s]." *Broadcast Music, Inc. v. Hearst/ABC Viacom Ent. Servs.*, 746 F. Supp. 320, 328 n. 7 (S.D.N.Y. 1990).

The first three elements are satisfied by the Declaration of Hope M. Lloyd (the "Lloyd Declaration") and the exhibits attached thereto, which sets forth the names of the authors and publishers of each composition, the date of copyright

registration, and the registration number.  *See* [Dkt. #30 at ¶¶ 5-6; Dkt. ## 30-2-30-9].[1]  Element four is satisfied by Friedman's admissions that the eight compositions were publicly performed at Defendant La Roue on June 6, 2013.  *See* [Dkt. #28, Ps' Local Rule 56(a)(1) Statement at ¶¶ 20-21; Dkt. #34, D's Local Rule 56(a)(2) Statement at ¶¶ 20-21].

### b. In Light of Friedman's Deemed Admissions to Plaintiffs' Requests for Admission Friedman is Vicariously Liable for the Infringement Activities

Plaintiffs seek to hold Friedman vicariously liable for the admitted infringement activity that occurred at La Roue on June 6, 2013.  [Dkt. #28 at 16-18].  The Second Circuit has long held "that one may be liable for copyright infringement even though he has not himself performed the protected composition."  *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1161-62 (2d Cir. 1971).  To establish vicarious liability, Plaintiffs are required to show that Friedman had (i) "the right and ability to supervise the infringing activity" and (ii) "a direct financial interest in such activities."  *Id.* at 1162.  Since Friedman conceded that he had a direct financial interest, the only live issue is whether he had the right and ability to supervise the June 6, 2013 performances at La Roue.  *See* [Dkt. #28, D's Rule 56(a)(1) Statement at ¶ 11; Dkt. #34, D's Rule 56(a)(1) Statement at ¶ 11].

In his Opposition, Friedman contends that, on the date in question, he lacked "the ability to supervise the activities and employees of the establishment

---

[1] Friedman does not contest any of the statements of fact in either the Lloyd Declaration or its accompanying exhibits, and he admits all of the statements of fact which are based on this Declaration.  *See* [Dkt. #28, Ps' Local Rule 56(a)(1) Statement at ¶¶ 21-23; Dkt. #34, D's Local Rule 56(a)(2) Statement at ¶¶ 21-23].

where the infringement occurred." [Dkt. #34 at 3]. In support, Friedman offers a sworn Affidavit attaching several documents and describing how he had a falling out with his co-owner, Cassara, that thereafter, Cassara exercised "exclusive control" over the business, that Cassara reduced Friedman's role in the business to the level of "any other patron," and that he never had any responsibility or control over the entertainment offered at La Roue. [Dkt. #35, Friedman Aff. at ¶¶ 3-4, 8].

As an initial matter, Plaintiffs' heavy reliance on evidence of Friedman's ownership rights and financial interest in La Roue to establish his ability to supervise the infringing activity is misplaced. *See* [Dkt. #28 at 16-17 (describing Friedman as "the sole, registered member of the Hub" and "the owner of the Cobb's Mill Inn"); Dkt. #37 at 6 (stating that "Friedman is not a 'mere member' of the defendant Hub . . . Friedman owns at least half of that entity . . . . Defendant Friedman individually borrowed all start-up funds for [La Roue] and was [] entitled to up to two thirds [] of any income generated in excess of necessary expenses for running [La Roue]")]. *All* of the cases to which Plaintiffs cite in support of their argument concern defendants who, in addition to holding a substantial ownership interest, could or did supervise the infringing activity.[2]

---

[2] *See Broadcast Music, Inc. v. DFK Ent., LLC*, No. 1:10-cv-1391 (GLS/DRH), 2012 WL 893470, at *1, 3 (N.D.N.Y Mar. 15, 2012) (finding "sole member and owner" vicariously liable where the owner also "was the club's general manager," "was authorized to control the activities at [the club]" and was "present 70% of the time it was open") (quotations and citations omitted); *Sailor Music v. Mai Kai of Concord, Inc.*, 640 F. Supp. 629, 633 (D. N.H. 1986) (imposing liability on the "sole shareholder, president, treasurer and director" of the infringing business upon concluding that he was "the dominant influence in the corporation" who "developed the policy for provision of live musical entertainment resulting in

Whether or not Friedman could supervise the infringing activity is precisely the issue Friedman raises in his Opposition.  As a result, a genuine issue of material fact remains; unless of course, Friedman is precluded from taking this position.

Both in their original motion and in their reply, Plaintiffs raise Friedman's failure to respond to any of their First Set of Requests for Admission ("RFAs"), which Plaintiffs served on Friedman's counsel on May 7, 2014.[3]  [Dkt. #28 at ¶ 5 (citing to [Dkt. #31, Perino Decl. at ¶¶ 2-3 and Ex. 1]); Dkt. #37 at 3-4].  The fifth RFA Plaintiffs served reads: "On June 6, 2013, Defendant Drew Friedman had the

_____

the copyright infringement"); *Design Tex Grp., Inc. v. U.S. Vinyl Mfg. Corp.*, No. 04 Civ. 5002 (JSR), 2005 WL 2063819, at *1-2, 4 (S.D.N.Y. Aug. 24, 2005) (rejecting co-owner's claim that he had "very little involvement in anything" and imposing individual liability based on evidence of his heavy involvement in previous copyright infringement activity, his connection with the individual who was "[t]he only person with knowledge" of what the copyrighted material looked like and the fact that the defendant "had the ability to supervise the infringing activity" but simply "chose not to do so"); *U.S. Media Corp. v. Edde Ent. Corp.*, No. 94 Civ. 4849 (MBM) (MHD), 1998 WL 2063819, at *7-8 (S.D.N.Y. Jul. 17, 1998) (imposing liability on two principals, one of whom was "in charge of determining which films the company purchase[d]" and who "arrang[ed] for purchases of films . . . including presumably the five infringing films" and the other, who held a "managerial position in the company," was "involved in the decisions about what previously-viewed videos to acquire" and who "was conversant with pricing"); *Cass Cnty. Music Co. v. Khalifa*, 914 F. Supp. 30, 33 (N.D.N.Y 1996) ("As the manager of [the infringing entity] and the person who rents out its recreation hall for musical performances, defendant has the right and ability to supervise the infringing activity.") (citations and quotations omitted).

[3] Plaintiffs' supporting Declaration clearly indicates that Friedman was properly served with the RFAs, in accordance with Federal Rule 5(b).  *See* [Dkt. #31, Perino Decl. at ¶ 2 (stating that the RFAs were "served on counsel for defendant Drew Friedman . . . via First Class Mail, and email"); *see Freed v. Plastic Packaging Materials, Inc.*, 66 F.R.D. 550, 552-53 (E.D. Pa. 1975) (holding that in order to rely on a deemed admission to a request for admission, "the record must show the request was [served] . . . in compliance with F.R.Civ.P. 5(b)") (citations and quotations omitted).

right and ability to supervise the persons employed by La Roue Elayne at Cobb's Mill Inn." [Dkt. #37 at 3]. Plaintiffs contend that "Friedman failed to serve a written answer or objection (or respond in any way) within the thirty day period after being served, and has not responded to this day." [Dkt. #28 at 2 n.1]. Despite being given the opportunity, Friedman's Opposition does not respond to this allegation nor does it even mention these RFAs.[4]

As Plaintiffs rightly assert, under Federal Rule 36, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed.R.Civ.P. 36(a)(3). This strict rule deeming untimely responses admitted is necessary, because "[a]n important purpose of the rule is to reduce the cost of litigation . . . by narrowing the scope of disputed issues . . . facilitating the succinct presentation of cases to the trier of fact . . . and eliminating the necessity of proving undisputed facts." *Thalheim v. Eberheim*, 124 F.R.D. 34, 35 (D. Conn. 1988). Rule 36 admissions, including those which are deemed admitted by a party's failure to respond, may be used for Rule 56 summary judgment. *Donovan v. Carls Drug Co.*, 703 F.2d 650, 651 (2d Cir. 1983), *rejected on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133-34 (1988); *see also SEC v. Batterman*, No. 00 Civ. 4835 (LAP), 2002 WL 31190171, at *8 (S.D.N.Y. Sept. 30, 2002) (granting summary

---

[4] Plaintiffs further allege in their reply that, in addition to Plaintiffs' RFAs, "Friedman has failed to object or respond in any way to any of Plaintiffs' discovery requests, served May 7, 2014." [Dkt. #37 at 1 n. 2]. Such discovery requests evidently included document requests, as Plaintiffs contend that the "five documents" Friedman attached to his Affidavit had never been previously disclosed. [*Id.* at 2]. Friedman also has remained silent as to this allegation.

judgment based on "[t]he foregoing facts, deemed admitted under Rule 36").  In addition, the non-responding party may not "attack issues of fact established in [Rule 36] admissions by resisting a motion for summary judgment."  *U.S. v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987); *accord O'Bryant v. Allstate Ins. Co.*, 107 F.R.D. 45, 48 (D. Conn. 1985) (noting that plaintiff "has not answered, denied nor objected" to defendant's requests for admission, rejecting plaintiff's attempt to "create a record contradicting [deemed] admissions in order to blunt [defendant's] motion for summary judgment," and determining "that when the rule makers provided that a matter was conclusively established, that was the end of any dispute on that matter").  Here, a deemed admission to Plaintiffs' RFA number five would be fatal to Friedman's defense against vicarious liability.

However, the Plaintiffs must overcome two hurdles.  First, in stating that Friedman had "the right . . . to supervise the persons employed by [La Roue]," RFA number five comes quite close to constituting an impermissible request for a legal conclusion.  [Dkt. #31-2, Ps' First Set of Requests For Admissions to Defendants at No. 5].  Such conclusions "may not be deemed admitted by virtue of [a] defendant['s] failure to respond."  *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012) (declining to admit as deemed admissions Rule 36 requests asking whether "the sunglasses depicted in various exhibits are counterfeit goods," whether they "infringe" on certain marks and whether the defendants "sold thousands of Infringing Products").  However, Plaintiffs were entitled to make requests concerning the "application of law to fact," and RFA number five, which concerns a general right to act, appears to fall

within this category of proper requests.  Fed.R.Civ.P. 36(a)(1)(A); *see also Rivers Elc. Co., Inc. v. 4.6 Acres of Land*, No. 89-CV-442, 1991 WL 255374, at *4 (N.D.N.Y. Nov. 25, 1991) (characterizing requests for admission "concerning the ownership of [] various parcels and the right of the owner . . . to build a dam on [a] parcel" as "statements of fact" while "statements concerning the relative water rights of these parcels and the effect of such rights on the compensable interest of the parties . . . are legal conclusions and therefore not the proper subject matter for a . . . request for admissions"); *Atmel v. Authentec Inc.*, No. C-06-02138 CW (EDL), 2008 WL 276393, at *3 (N.D. Cal. Jan. 31, 2008) (declining to sustain plaintiff's objection that defendants' requests for admission "called for legal conclusions" and requiring plaintiff to respond to "two factual requests for admission in lieu of the [defendant's] requests," one of which was a request stating "that [a third party] has a license to the patents-in-suit with the right to sub-license"). Regardless, even if this RFA did call for an improper legal conclusion, Friedman also failed to respond to RFA number twenty-four, which states that "Defendants [Friedman included] hired a band to perform live music at La Roue . . . on June 6, 2013," the day on which the infringing activities occurred.  [Dkt. #31-2, Ps' First Set of Requests For Admissions to Defendants at No. 24].  Friedman's admitted role in hiring the band which performed the copyrighted compositions at the venue he co-owned would be sufficient, as a matter of law, to establish his right and ability to supervise the infringing activity.  *See, e.g., Cass Cnty. Music Co. v. Khalifa*, 914 F. Supp. 30, 33 (N.D.N.Y 1996) (finding manager of recreation hall who hired musical performances liable for infringing activity during a performance at

which he was not present); *Elektra Records Co. v. Gem Elec. Distribs., Inc.*, 360 F. Supp. 821 (E.D.N.Y. 1973) (record shop which sold blank recording tapes and rented sound recordings to customers who would use a recording machine on the store premises to copy the rented recording on blank tapes was liable for knowingly facilitating infringement).

Second, Plaintiffs must overcome the fact that Rule 36, while properly strict, "does not require the court automatically to deem all matters admitted" upon a party's "failure to respond in a timely fashion."  *Local Union No. 38, Sheet Metal Workers' Intern. Ass'n, AFL-CIO v. Tripodi*, 913 F. Supp. 290, 294 (S.D.N.Y. 1996).  Under Rule 36(b), "a matter admitted under [Rule 36] is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."  Upon such motion, the Court may amend or withdraw an admission when (1) "it would promote the presentation of the merits of the action" and (2) "if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."  *Id.*  However, "the court is not required to make an exception to Rule 36 even if both the merits and the prejudice issue cut in favor of the party seeking exception to the rule."  *Donovan*, 703 F.2d at 652.

To date, Friedman has failed to make any motion of any kind with respect to these requests for admission.  Even after Plaintiffs initially pointed out his failure to respond in their motion for summary judgment, Friedman submitted an Opposition which made absolutely no mention of them.  *See* [Dkt. #28 at 2 n. 1; Dkt. ## 34-35].  He has also been represented by counsel in this matter for

approximately the last two-and-a-half years. *See* [Dkt. #17]. In fact, Friedman's counsel entered his appearance nearly seven months *before* Plaintiffs served their RFAs. *See* [*id*; Dkt. #31, Perino Decl. at ¶ 2].

In the interest of justice, the Court has diligently searched for precedent, but it has not found any supporting a *sua sponte* withdrawal of a represented party's response to a request for admission where the party has not, at any point, responded to the request, moved for an extension of time, affirmatively sought to withdraw the deemed admission, or otherwise acknowledged the existence of the request. To the contrary, case law strongly suggests that a *sua sponte* withdrawal under these facts would be improper, given the language of Rule 36(b), which decrees that it is *"on motion"* when a court may permit for the withdrawal or amendment of a request for admission. Fed.R.Civ.P. 36(b) (emphasis added). *See In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001) ("[A] deemed admission can only be withdrawn or amended by motion in accordance with Rule 36(b)."); *Am. Auto. Assoc. Inc. v. AAA Legal Clinic of Jefferson Crooke P.C.*, 930 F.2d 1117, 1119-20 (5th Cir. 1991) (holding trial court abused its discretion when it *sua sponte* "deemed one admission withdrawn and ignored others"); *U.S. v. $30,464.00*, No. SACV 10-4465-DOC (MLGx), 2014 WL 5017856, at *3 (C.D. Cal. Oct. 3, 2014) (holding that where a party "failed to respond to the requests for admission . . . and has not filed a motion under Federal Rule of Civil Procedure 36(b) . . . the issues raised in the requests for admission are deemed conclusively established") (citing *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1111-12 (9th Cir. 2006)). The lone district

court in this Circuit to have addressed the issue of whether a motion under Rule 36(b) is necessary for the withdrawal of a party's deemed admissions also answered this question in the affirmative.  In *Atl. Sea Pride, Inc. v. McCarthy*, No. 1:13-cv-0670 (LEK), 2013 WL 5652492, at *1-3 (N.D.N.Y. Oct. 15, 2013), the district court upheld both the bankruptcy judge's decision to rely on the non-responding party's deemed admissions in granting summary judgment and his subsequent decision to deny a motion for reconsideration based upon a post-judgment request to respond to the requests for admission.  The court noted, with approval, the bankruptcy court's observation that "the proper way to attempt to withdraw or amend admissions made by default is a motion to that effect under Federal Rule of Civil Procedure 36(b)," and that "even if the court treated [the party's] motions for reconsideration as such, it was too late to correct discovery deficiencies because judgment had already been entered."  *Id.* at *1.  In affirming the decision, the court cited to a number of cases supporting the proposition that Rule 36 admissions "may be withdrawn or amended only by a motion made under Rule 36(b)."  *Id.* at *2.  It also summarized the conduct and circumstances surrounding the defendant's failure to respond to the requests, which bear a strong resemblance to the present matter:

> Here, Appellant, who was represented by counsel, had over four months to respond to the requests for admission, sought and received extensions of time to do so, and was on notice that a motion for summary judgment would be filed premised on its failure to do so.  Appellant neither moved for a further extension of time to respond nor moved to withdraw or amend under Rule 36(b)

*Id.*[5]

Since Friedman has not moved the Court to withdraw his Rule 36 deemed admissions, and the admissions were properly served and contain proper requests which, together with other undisputed evidence, establish infringement and Friedman's vicarious liability, the Court enters summary judgment as to liability in favor of Plaintiffs.[6]

Having found Friedman vicariously liable, the Court now must determine whether he acted willfully. To establish that a defendant's infringement was willful, the plaintiff must show either that the defendant had "knowledge that its actions constitute an infringement . . . or that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *HarperCollins Publishers LLC v. Open Road Integrated Media, LLP*, No. 11 Civ. 9499 (NRB), 2014 WL 5777929, at *5 (S.D.N.Y. Nov. 6, 2014) (citing and quoting *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986) and *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)). Friedman's knowledge (constructive or otherwise) and receipt

---

[5] Friedman did *even less* in response to Plaintiffs' requests for admission than the defendant in *Atlantic*, as that defendant sought and received extensions of time to respond to the requests. Here, none of Friedman's filings make any mention of these or any of Plaintiffs' other unanswered discovery requests.

[6] Of course, Friedman's admissions of infringement and vicarious liability are binding only on him. *See Riberglass, Inc. v. Techni-Glass Indus., Inc.*, 811 F.2d 565, 566-67 (11th Cir. 1987) (holding defendant guarantor of company's debt not bound by deemed admission of co-defendants and finding district court improperly granted summary judgment against party on basis of deemed admissions of other non-responding parties); *Becerra v. Asher*, 921 F. Supp. 1538, 1544 (S.D. Tex. 1996), *aff'd on other grounds*, 105 F.3d 1042 (5th Cir. 1997) (deemed admissions binding only on non-responding party). Plaintiffs may not rely on them as they proceed against the remaining defendants.

of upwards of ten letters from BMI informing him of his duty not to infringe,

coupled with his total lack of response, render him, at minimum, willfully blind.

[Dkt. #28, Ps' Local Rule 56(a)(1) Statement at ¶ 26].[7]  While Friedman claims that

after February 2013 he lacked any control of the business, his Affidavit makes

clear that he was still able to enter the restaurant, at minimum, as a patron.  *See*

[Dkt. #35, Friedman Aff. at ¶ 4].  That Friedman chose not to call, send a letter, or

otherwise communicate with Cassara about these letters and request that she

eliminate the infringement activity at La Roue, renders Friedman a willful

participant.  Although Friedman initiated legal proceedings to repossess the

premises, he clearly did so in furtherance of his own interests, not the Plaintiffs'.

[*Id.* at ¶ 10].

### Damages

Having found that Friedman is vicariously liable for the infringing activities

and, by turning a blind eye to BMI's numerous letters and emails, he acted

willfully, the Court turns to the question of damages.  Plaintiffs seek a permanent

injunction, statutory damages, and attorneys' fees.  [Dkt. #28 at 18-23].

   a.   **Plaintiffs are Entitled to a Permanent Injunction Against Infringement on BMI-Licensed Music**

The Copyright Act provides that courts "may" grant an injunction "on such

terms as it may deem reasonable to prevent or restrain infringement of a

copyright."  17 U.S.C. § 502(a).  "An injunction, however, is not mandatory and

does not automatically follow a determination that a copyright or trademark has

---

[7] **Prior to February 2013, Friedman and Cassara, collectively, were sent seventeen communications in the form of letters and emails regarding BMI licensing and the risk of copyright infringement.  *See* [Dkt. ## 29-3-19].**

been infringed." *Beastie Boys v. Monster Energy Co.*, No. 12 Civ. 6065 (PAE), 2015 WL 736029, at *3 (S.D.N.Y. Feb. 20, 2015) (citing and quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006)).  A plaintiff "seeking a permanent injunction still must satisfy the traditional four-factor test before the district court may use its equitable discretion to grant such relief."  *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 551 (S.D.N.Y. 2008).  Specifically, a plaintiff must demonstrate:

> (1) that it will suffer an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction

*Id.* at 551-52.

To support their request for a permanent injunction, Plaintiffs cite to authority (albeit outside this Circuit) for the proposition that a permanent injunction is appropriate where a defendant's willful conduct indicates that it presents a continuing threat to conduct future acts of infringement.  *See* [Dkt. #28 at 18-19].  The Court agrees.  Courts in this Circuit frequently issue permanent injunctions against defendants who pose a "significant threat of future infringement."  *Hounddog Prods., LLC v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 634 (S.D.N.Y. 2011) (finding plaintiffs "established that any remedies available at law are inadequate to compensate for their injuries" where there was "no evidence to suggest that [defendant] has stopped or will stop" infringing and there is evidence of willful conduct to suggest that defendant "is willing to continue its infringement"); *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v.*

*Star Mark Mgmt., Inc.*, No. 04-cv-2293 (SMG), 2009 WL 1796781, at *1 (E.D.N.Y. Jun. 24, 2009) (awarding permanent injunction after rejecting defendants' contention that "they pose no threat of future infringement" and finding instead that an individual defendant's "long involvement in the [relevant] business," "his repeated run-ins with infringement claims, and his lack of candor when testifying at trial, sufficiently demonstrate the threat of a continuing violation"); *Ortho-O-Vision, Inc. v. Home Box Office, Inc.*, 474 F. Supp. 672, 686 (S.D.N.Y. 1979) ("Where . . . liability has been determined adversely to the infringer, there has been a history of continuing infringement, and a significant threat of future infringement remains, it would be inequitable to grant the copyright owner partial summary judgment on the issue of liability without enjoining the infringement of future works.").

Here, Friedman's plain disregard for the letters and emails he and Cassara received during the period of August 2012 through February 2013, when Friedman admittedly had the ability to participate in the management of La Roue, and those he received thereafter notifying him of BMI's licensing rights, and the fact that he is presently operating a different restaurant at The Cobb's Mill Inn are sufficient to indicate that he poses a continuing threat of infringement. The other factors articulated by the Second Circuit also militate towards granting a permanent injunction against Friedman. The potential harm of "lost sales" in copyright infringement cases such as this "are difficult if not impossible to measure." *Beastie Boys*, 2015 WL 736029, at *4. In addition, the Court detects few, if any, hardships that such an injunction would impose on Friedman. Indeed,

to the extent Friedman "elects to build a business on product found to infringe [he] cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Mint, Inc. v. Amad*, No. 10 Civ. 9395 (SAS), 2011 WL 1792570, at *3 (S.D.N.Y. May 9, 2011) (citation and quotation omitted). Finally, the injunctive relief imposed would not disserve the public interest. Accordingly, a permanent injunction is warranted.

      b.   <u>Plaintiffs Are Entitled to Recover $6,000 in Statutory Damages From Friedman</u>

The Copyright Act permits the Court to award statutory damages "in a sum of not less than $750 or more than $30,000 as the court considers just."  17 U.S.C. § 504(c)(1).  The Court may award an amount within this range for each act of infringement.  *See Wilen v. Alt. Media Net, Inc.*, No. 03 Civ. 2524 (RMB) (JCF), 2004 WL 2823036, at *2 (S.D.N.Y. Dec. 3, 2004) ("Pursuant to 17 U.S.C. § 504(c)(1), the plaintiff is entitled to an award of between $750 and $30,000 per act of infringement.").  Moreover, "[i]n a case where the copyright owner sustains the burden of proving . . . that infringement was committed willfully, the court in its discretion may increase the award [up to] . . . $150,000" per act.  17 U.S.C. § 504(c)(2).  In awarding statutory damages, courts have broad discretion to set the amount of the award within the statutory limits.  *Fitzgerald*, 807 F.2d at 1116-17.

While Friedman acted willfully, his Affidavit raises mitigating circumstances which the Court can and does consider.  Beginning in February 2013, co-Defendant Cassara assumed exclusive control over Defendant La Roue. [Dkt. #35-3, Friedman Aff. at ¶ 3].  Friedman contends, and Plaintiffs do not dispute, that from this time forward, Cassara rebuffed Friedman's efforts to

remain involved in the management of La Roue by, among other things, emptying his office and removing its contents, publicly informing him that he was permitted to remain on the premises to the extent of "any other patron," taking over all hiring and termination of employees, retaining all income and any profits, and refusing to pay rent on the business. [*Id.* at ¶¶ 3-4, 7].  While these facts are insufficient to overcome the conclusion that Friedman willfully disregarded the notices he received, they do, in part, offset the degree of willfulness Friedman displayed.  The Court also considers the fact that the annual license fee Friedman would have had to pay BMI to lawfully perform the music on June 6, 2013 was $7,607.50 and that Plaintiffs have not alleged any subsequent infringing acts on the part of Friedman.  *See* [Dkt., #28, Ps' Local Rule 56(a)(1) Statement at ¶ 26].  Accordingly, as to Friedman, the Court awards Plaintiffs $6,000 in statutory damages.

> c.    Plaintiffs are Entitled to Recover the Attorneys' Fees They Seek

The Copyright Act authorizes the Court to "award a reasonable attorney's fee to the prevailing party."  17 U.S.C. § 505.  BMI has submitted a sworn Declaration in support of their fee request and the Court finds this request reasonable.  [Dkt. #31 at ¶ 7].  The Court declines to award costs as Plaintiffs "fail to specify the amount of costs" to which they are entitled.  *De Masi v. Countrywide Home Loans, Inc.*, No. 08 Civ. 0546 (SCR) (GAY), 2008 WL 4447613, at *1 (S.D.N.Y. Oct. 1, 2008).

**Conclusion**

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is

GRANTED and the Court awards Plaintiffs $6,000 in statutory penalties, $11,000 in

attorneys' fees, and permanently enjoins Friedman from infringing on

copyrighted musical compositions licensed by BMI.

IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: April 2, 2015